```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
   ERICA HERZOG,                                            :
                                                            :   MEMORANDUM DECISION AND
                                       Plaintiff,           :   ORDER
                                                            :
             - against -                                    :    21-cv-332 (BMC)
                                                            :
                                                            :
   THE NEW YORK CITY DEPARTMENT                             :
   OF EDUCATION and PAT FINLEY,                             :
   individually and in his official capacity,               :
                                                            :
                                       Defendants.          :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This is a pregnancy discrimination case brought under Title VII and 42 U.S.C. § 1983 by a probationary teacher against the New York City Department of Education ("DOE") and the principal of one of its schools. Even assuming *arguendo* that plaintiff has demonstrated a *prima facie* case of discrimination at step 1 of the McDonnell-Douglas analysis, she fails to raise an issue of fact at step 3 as to whether she was terminated because she was pregnant, rather than because of inadequate performance. Defendants' motion for summary judgment is therefore granted.

## BACKGROUND

Plaintiff was employed as a probationary employee at the Metropolitan Expeditionary Learning Center ("MELC"), a DOE school, from January 2017 to June 2019. She received regular evaluations, as did all probationary employees. Her scores were mediocre, as the various performance categories were about evenly split between "Developing" and "Effective." (The scale is Ineffective, Developing, Effective, and Highly Effective.) However, her cumulative

Measure of Teacher Practice ("MOTP") score for the 2017-2018 school year was 2.34 out of 4, the lowest score at MELC.

In November 2018, plaintiff told the principal of MELC, defendant Finley, that she was pregnant. Her 2018-2019 evaluations were roughly comparable to her 2017-2018 evaluations overall, although there was a modest decline. Her cumulative MOTP score for the year was 2.22 out of 4, the second lowest score at the school. At the end of the school year, the two teachers with the lowest MOTP scores, including plaintiff, had their probationary employment terminated. The other probationary teacher was not pregnant (at least as far as defendants knew).

Besides what plaintiff considers to be a worsening pattern of evaluation after disclosure of her pregnancy, she relies on several comments she heard in the workplace to support her belief that she was terminated because of her pregnancy. First, Finley told plaintiff at the end of the 2017-2018 school year that she "had made a lot of growth in the prior year." Because this arguably positive comment happened before disclosure of her pregnancy, she believes the decline in her evaluations were due to this disclosure. Second, at a staff meeting during the 2018-2019 school year, administrators, including Finley, discussed a teacher that had recently had a child and left the school district. Finley then said to the group, "if this doesn't feel like a good fit and you can't adjust to the work here, then you have to leave."[1] Third, plaintiff's co-teacher made "a couple of comments" to the effect that "you can't have kids and be a mom at the DOE."

---

[1] Plaintiff has submitted a notarized letter from Ashley Bartlett, plaintiff's co-worker, who corroborates this statement. However, most of the letter from Bartlett is inadmissible, as it expresses her opinions or conclusions, e.g., "I feel that …" and her assessment of plaintiff's teaching ability, and it contains hearsay about what plaintiff told her. I am disregarding the inadmissible portions of the letter.

Plaintiff also perceived that after disclosure of her pregnancy, she no longer received constructive feedback, and her teaching coach would miss meetings and was less present in her classroom than the coach had been before.[2]

## DISCUSSION

Summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The record must be construed in the light most favorable to plaintiff, Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 108 (2d Cir. 2013), but "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In a discrimination case, summary judgment is appropriate "when the moving party demonstrates . . . after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no reasonable jury could find in the non-movant's favor." Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996). Because intent is at issue, district courts must be "especially chary in handing out summary judgment in discrimination cases." Id. at 87. Nevertheless, "conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 151 (2d Cir. 2007).

Claims under Title VII or § 1983 for pregnancy or gender discrimination are governed by the familiar three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Walsh v. New York City Housing Auth., 838 F.3d 70, 74-75 (2016). First, a "plaintiff must establish a *prima facie* case of discrimination by demonstrating

---

[2] The record is not clear as to whether defendants, as part of their usual practice, provided the same level of coaching support for second-year probationary teachers as they did for first-year probationary teachers. Finley's deposition testimony implies that they did not.

that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Id. at 75 (internal citations and quotation marks omitted). Second, "[i]f the plaintiff successfully establishes a *prima facie* case, 'the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.'" Id. (quoting United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011)). Third, "[i]f the employer carries that burden, 'the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" Id. (quoting Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004)).

Relying on Spiegel v. Schulmann, 605 F.3d 72 (2d Cir. 2010), defendants have restated the second factor for establishing a *prima facie* case. Instead of asking whether plaintiff was "qualified for her position," defendants rely on Spiegel's characterization of the requirement as to whether plaintiff "was competent to perform the job in question, or was performing the job duties satisfactorily." Id. at 80. Defendants argue that, based on her mediocre evaluations and low rank in comparison to other probationary teachers, especially for the year 2017-2018 before defendants knew she was pregnant, she was not satisfactorily performing her job. Plaintiff retorts that she was never disciplined for poor work performance and had only one "Ineffective" category ranking, but defendants respond that surely the DOE can require a probationary teacher to do better than that before offering her a tenured position.

It is not clear which characterization of the second factor best fits a probationary employee. Defendants do not challenge plaintiff's qualifications to have been hired for her

4

position. Rather, they claim that her unsatisfactory performance showed that she was not qualified to take the next step to being "promoted" to a non-probationary teaching position.

Under either formulation, however, defendants overlook the fact that plaintiff's required showing for a *prima facie* case is *de minimis*. See Russo v. Wyandanch Union Free School Dist., No. 23-716, 2024 WL 2350314, at *2 (2d Cir. May 23, 2024). That means, at this stage at least, that the Court cannot look at plaintiff's evaluations in the light most favorable to defendants. If plaintiff had received many "Ineffective" marks, the matter might be different, particularly before defendants knew she was pregnant. But the Court cannot conclude as a matter of law that the "Developing" mark, even though clearly not entirely satisfactory, means unsatisfactory. That is particularly the case because plaintiff received a number of "Effective" marks and only one "Ineffective" mark, and plaintiff asserts that Finley told her she had "made a lot of growth" at the end of the first year (although that is, of course, a relative statement).

I recognize the question on this factor is close. Plaintiff ranked near or at the bottom of the school's probationary employees in both years of her probationary period. But again, she attributes her low marks in 2018-2019 to defendants' learning that she was pregnant, an argument that cannot be determined as a matter of law against her on her *prima facie* case. And in determining whether she has shown a *prima facie* case, I may consider only the evidence she would offer at trial, not defendants' rebuttal evidence. See Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 460 (S.D.N.Y. Feb. 14, 2006). I therefore find that she has satisfied the second factor for demonstrating a *prima facie* case, albeit barely.

Where plaintiff's case becomes even more strained, however, is on the fourth factor – has she demonstrated that she was terminated "under circumstances giving rise to an inference of discrimination"? Basically, she's got two stray comments in support of this factor. One is from

Finley at the staff meeting where he stated, construed most favorably to plaintiff, that another teacher had to leave because the school is very demanding on its teachers and that teacher could not reconcile the demands with her pregnancy. The other is a statement by her co-teacher that "you can't have kids and be a mom at the DOE." This is not much evidence upon which a jury could find an intent to discriminate, but again, given the *de minimis* standard, I will assume it suffices.

But plaintiff's evidence cannot survive the rest of the McDonnell Douglas journey. There is no question that at step 2, defendants have raised a *bona fide* business justification for not retaining her: her performance reviews put her at the bottom of both years under review. As Finley testified about her evaluations:

> … [T]hey [her first year evaluations] were pretty bad. You, know, there were a lot of Developings. … [S]he was a first-year teacher, so, first-year teachers can struggle with transition into the classroom. But I certainly recall Ms. Herzog being, if not our lowest rated teacher, like one of our lowest rated teachers.
> …
> [M]anagement was bad in both year 1 and year 2. I think it was actually in year 2 there was like a … I had never seen a bullying episode in a classroom when I was there doing an observation, but, like, kids were actually bullying one another in front of the classroom … .

And although I reject defendants' suggestion that because a probationary employee can be terminated for any reason, she is somehow not protected by anti-discrimination laws (as one brief point heading states, "Probationary Employees of the DOE Can Be Dismissed At Any Time for Any Reason"), the fact is that in dealing with a probationary employee, defendants' discretion is particularly broad. They were not obligated to to take a chance on someone with such low evaluations.

It is therefore not surprising that when we move to step 3 of McDonnell Douglas, plaintiff's claim falls well short. She complains that her performance evaluations shouldn't be

6

trusted, but she never complained about or grieved any of those evaluations or even voiced a concern that she was a victim of pregnancy discrimination, and her non-stellar first year evaluations are not materially different from her post-disclosure second year evaluations.

Finley's general comment at a faculty meeting about being a "good fit" (which was not directed at plaintiff), although using a teacher who left due to pregnancy as an example, is just as readily construed as emphasizing the need for a very high commitment to the job. That is consistent with the corroborating notarized letter from a friend of plaintiff's, Ashley Bartlett, that plaintiff has submitted (see n.1 supra) in opposition to defendants' motion. There, Bartlett states: "Some staff at [the school] felt that expectations of teachers were unfairly high and asked for time commitments above and beyond the contractually agreed upon limits by the [United Federation of Teachers]." According to Bartlett, the discussion of that topic was the reason the administration called the faculty meeting – not to talk about pregnancy being any more incompatible with the job than any other non-school time commitment. Finley's statement amounts to no more than an "isolated and ambiguous" remark which, even when made by a decision maker, does not support an inference of discrimination. See Pasha v. Mercer Consulting, Inc., No. 00-cv-8362, 2004 WL 188077, at *5-6 (S.D.N.Y. Feb. 2, 2004). "Only where decision-makers repeatedly make comments that draw a direct link between a plaintiff's membership in a protected class and an adverse employment action can an inference of discriminatory animus be drawn." Kaur v. N.Y.C. Health & Hosps. Corp., 688 F. Supp. 2d 317, 333 (S.D.N.Y. 2010).

As to the co-teacher who made the "can't be a mom at the DOE" comment, plaintiff has offered no evidence that this teacher had any role in the decision not to retain her. Occasional comments by co-workers not involved in the hiring or retention process are entitled to little

7

weight. See Eyuboglu v. Gravity Media, LLC, 804 Fed. App'x 55, 57 (2d Cir. 2020). In addition, although plaintiff has a feeling that she had less coaching in her second year, there is nothing in the record that quantifies that or suggests that even if it happened, it was not part of defendants' regular policy to provide less coaching in the second year.

Finally, there are two other related points in the record that would make it unreasonable for any jury to find in plaintiff's favor.

First, although comparators are only one way that a plaintiff can show that a defendant's proffered *bona fide* business justification in a discrimination case is pretextual, see Sleis v. Kenyon Oil, 04-cv-1464, 2007 WL 2889470, at *4 (D. Conn. Sept. 28, 2007), plaintiff not only has no comparators, but to the extent there are any, that would cut dramatically against her – the only other probationary teacher who was terminated was also at the bottom of the class just like plaintiff, and that teacher, unlike plaintiff, was not pregnant. That strongly suggests that it was plaintiff's performance, not pregnancy, that was defendants' motivating factor in refusing to terminate her.

Second, this is reinforced by plaintiff's friend Ashley Bartlett, who notes, unsurprisingly, that "most of the staff at [the school] were [in their] mid-twenties to late thirties." Yet plaintiff and one other probationary teacher were the only ones in this child-bearing and child-raising age group (I am, of course, including male probationary teachers in this group) who were not given tenured status. One was pregnant – plaintiff – and the other was not. In this situation, the absence of comparators would leave a reasonable jury no option but to conclude that it was plaintiff's performance, not her pregnancy or the prospect of raising her child, that motivated defendants to terminate her.

8

## CONCLUSION

Defendants' motion for summary judgment is granted.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       July 24, 2024

9